of Alaska, and I'm here today on behalf of Brooke and Child with Disabilities. And before I begin, I would like to reserve a few minutes for rebuttal. At the core of Brooke's case is the state's failure to enforce its own regulations. This is important because under the Individuals with Disabilities Education Act, exhaustion is not absolute. Context matters. Brooke has Down syndrome. Her IEP team determined that she requires related services. Under state law, she's entitled to monthly, on-site, in-person supervision of these services. Her school cannot provide these services. The state knows this and admits it has done nothing. If she had gone through a due process hearing before a hearing officer, would a hearing officer have been able to order that the district provide the monthly on-site supervision? Could have ordered it? In this case, Your Honor, yes, the hearing officer could have ordered that, but it would have been futile for Brooke to request due process hearing. The district here simply can't provide that service. And that is why I would refute or review that in this case. In addition, Brooke's case is remarkably similar to the holding in Christopher S., in which this court held that further exhaustion was not required when a child challenges a patiently invalid policy. First and foremost, Brooke's parents, like the parents of Christopher S., filed an administrative complaint with the state, alleging, at least in part, the violations here before the court, and they allowed the state an opportunity to investigate and issue a decision on that matter before they filed a statement. But counsel, here, unlike Christopher S., there's a factual dispute as to whether the state has a policy of condoning the noncompliance. A disagreement with the finding of compliance in the state's investitory report shouldn't, or should it, automatically enable a plaintiff to avoid the exhaustion requirement. Well, Your Honor, we would argue that there isn't a factual dispute here that could be addressed in due process. The issue here isn't what the state and the objective standards. The state standard requires monthly, on-site, in-person supervision, and regarding the factual dispute, whether or not the state actually is not enforcing the law, that's something that a due process hearing officer wouldn't be able to decide. Why? Well, in the state of Alaska, we don't have jurisdiction, our But they could tell, but, so who provides the monthly on-site supervision? Who's responsible for that? Well, there's sort of two tiers of responsibility under the IDDA. The first line of responsibility falls to the district. District, okay. The second line falls to the state, and the IDDA... And the, there was some hearing in this where there was a finding, actually, that they, the district was not out of compliance. Isn't that correct? No, in fact, the finding is explicit in that the district isn't providing the monthly on-site in-person supervision. But that it was not a violation of state law? Was there any finding on that regard? Yes. Yes, that was the finding, correct? The finding was that the district's response to personnel shortages was adequate. Okay, and so, I'm sorry, that's what I thought. So just a, so then the next step that you haven't pursued was to go to a hearing officer to appeal that decision, correct? In this case, based on those findings, it would be futile... That's not my question. You're, that's a legal conclusion. What I'm asking is the next step would have been to go to a hearing officer to appeal that determination. Again, that's certainly... Could have done it. Now your argument is we could have done it, even if we'd overturned that decision, the hearing officer was powerless to make anything change because, why, the district doesn't have the money, doesn't have the resources? Absolutely. And that's clear in the administrative record here, that there is a severe shortage of personnel and the district has been unable to address that. And under the IDEA, under Section 1412, the state must enforce that standard and under 1413 must step in, in these instances, when a district can't. But wasn't there some evidence the district was trying to remedy, was trying to get the personnel? It wasn't an intentional, we're not going to do it. It said, we want to do it, but we can't. People are leaving their jobs, they're trying to get people to come to Alaska to do it. Actually, what the administrative complaint makes clear is that the district, in addressing that, was moving wholesale away from a monthly onsite enforcement supervision model and moving towards a consultative model that is facially inconsistent with the law and the state's failure to enforce that provision is what's at issue in Brooke's case. So the district, as evidenced by the administrative complaint, wasn't actively trying to meet that state standard. They were moving away from that state standard. The state wasn't enforcing it. Could you direct me to the record where that is indicated? Because my reading of the record was that they wanted to do the monthly, they were unable to get the personnel, therefore they had moved to the quarterly or the consultative standard. And what you're indicating to me is they are making the decision to give up the monthly intentionally, not intending to go back to it if they could get the personnel. The concept of the record, page 45, should be paragraph 127. If you go down and interview with the speech pathologist, she actually says that she was hired to transition from a direct therapy model to a consultative model. And then in the parenthetical following it says, similar to that of OT, PT, psych services in the district. So the district, if we look at this in terms of the services that Brooke needs, she was responsive. She needed physical therapy, occupational therapy, speech therapy. The district had already adopted this consultative model for occupational therapy and physical therapy and was then moving towards this model for speech. Certainly that was precipitated by the direct loss in that personnel. But that's what she makes clear that she was moving towards in helping the district transition to that model. I'm sorry, what was the site again on that? Tell us if you're correct, page 37, and, excuse me, if page 30, no, excuse me, page 45 is paragraph 127 and the comment occurs almost in the middle of that paragraph there. That's fine, thank you. And again, Christopher S. makes clear that in these kinds of circumstances, a due process hearing isn't required when we have a facial count as seated on the podium. Yeah, why don't you say, let's hear from the state and see what they have to respond. May it please the court, I'm Neal Slotnick, representing the Alaska State Department of Education and Early Development, and today's argument is going to be... Excuse me, it's Neal? Yes. In the... Stephen C., Stephen Cornelius, and I go by Neal. Okay, I just thought, I want to make sure you get proper credit, okay. In the two arguments I'm going to make today, the first is Brooke had no standing to bring a federal court case because she has not alleged any harm. The second, that if she does have standing, if she has alleged harm, then she must exhaust administrative remedies in order to cure that harm. Now, in addressing the standing issue, the important thing about this record is that this record shows that Brooke received all of the services to which she needed. She received the occupational therapy, the physical therapy, the speech therapy. The services that were delivered in her classroom were appropriate, and she was found to have received an appropriate education from her school district. The Alaskans gave her school. There is nothing in state law that makes a consultative law feel legal. It's very common, especially in rural Alaska, where there aren't physical therapists or therapists to come and supervise the services that are actually provided on a day-to-day basis in the classroom by the trained aides or classroom teachers. And that's the model that Alaska Gateway School District was pursuing. What about the monthly requirements, though? There is a monthly requirement for supervision, and that means that on-site supervision, and the state board put that requirement into regulation because we wanted to make sure that there was sufficient training and that there was sufficient supervision of those services. What the complaint investigator does is the complaint investigator is going to look at the question of free, appropriate public education. Are the services that are delivered in the classroom adequate? What the complaint investigator found here, after looking at all the documents, after doing all of the interviews, he found that the services in the classroom were adequate. And remember, the IEP here actually provided quarterly supervision, according to the record that we have in front of us. A complaint investigator cannot amend an IEP. And that is the difference between the complaint investigation and the due process hearing. The complaint investigation, after all, is a very efficient and very effective process that parents can access with minimal expense and minimal involvement. And it really is very effective in getting districts to implement IEPs, certainly in resolving issues like that. But where you have an IEP that perhaps needs to be amended, only a due process hearing officer can do that. What our argument here is, first of all, of course, on harm. Because the services were adequate, and that finding is established in this record, and she does not challenge that finding of the adequacy of her services. And she's not getting it. Well, she's not getting the supervision. If the service providers aren't complying with state law, it's not clear to me that she wouldn't have standing to allege that and to bring it forward. I mean, she's entitled to what the state law provides, is she not? Yes, Your Honor, I would agree with that. I don't want to overstate the standing argument. To me, I think it would be very easy for Brooke to allege before a due process hearing officer that her school district had failed to provide needed services, that her IEP didn't comply with law, and then to allege facts that show how that resulted in deprivation of educational benefit. What I'm struggling with here on this record is I read the complaint, and then I read it as supplemented by the briefs. I don't see any allegation here that Brooke has suffered an educational benefit. And until she alleges that, then she doesn't have standing to bring a case to federal district court. Well, my understanding of standing is that on a motion to dismiss, we presume that the general allegations embrace those specific facts that are necessary to support the claim. And I cite to Lujan v. Defenders of Wildlife. What? She's done that here, hasn't she? Well, Your Honor, I don't see that in her complaint, because I don't see allegation of a deprivation of educational benefit. Yes, the lack of monthly visits, direct supervision, according to state law. Right, but the benefit in the classroom services. Does she have access to a free and appropriate public education? She doesn't deny that she does. And that's what, there's no harm if you're getting... No, but that could go to the quality of the service. It gets better supervision, it gets better workers. But let me ask him out more practically. Has anything happened in this case, in terms of, you know, administratively since the district court decided this case? Yes, Your Honor, there has been a change, and that is that state law has now changed. The Alaska State Board of Education and Early Development has amended the regulation that used to require monthly supervision of the aides and the teachers who come. To quarterly. They've made it now so that the IDP team can determine that quarterly is adequate. Still, actually, there's still a default provision that it should be monthly unless the IEP team makes a determination that quarterly is adequate. And in this case, it was Crook's IEP team that made the determination. Yeah, but that wasn't the law at the time, so... But the IEP says monthly, right? The IEP says quarterly. It was the IEP team that made the determination, at least for the occupational and the physical therapy, that quarterly supervision was sufficient. But at the time that she's complaining about, that wasn't the state law. That is correct. It's not the state law, it was the monthly. Are you arguing that the new regulation moots her claim? In my view, certainly if it's a policy issue that is at issue here, then yes, because policy has since been changed. Okay. But is that what you understand the complaint is seeking? I'll say the compliance with the monthly supervision visit? Well, the complaint does have requests for compensation, so that gets a little bit confusing. Again, I go back to the issue here of harm. What do you mean the compensation? You mean for damages? It's not clear. It asks for compensation for the lack of supervision, and I'm not clear on what that means. But, again, because of the lack of harm, I don't see how that relates. Maybe given the time that we have, could you address then the issue of exhaustion, because that does seem to be a difficult question. Assuming she has standing and assuming there isn't something hung up on the IEP, it does seem that there's a clear violation of state law, that the district was not providing the monthly supervision of these providers. I understand all your arguments about no harm, no foul, and all of that, but what would a due process hearing result in to remedy that aspect of compliance with state law? Well, the due process hearing, if the hearing officer did find that there was, in fact, a violation of state law, which is perfectly plausible, that the complaint investigator might have made an error, might have overlooked an issue. That's plausible. The hearing officer, though, provides a much more sophisticated administrative remedy. They are, after all, attorneys. They are trained. Yes, but what would be the remedy here, cutting through it all? The remedy would be an order. It would be, first of all, an order to the district to do what? To provide monthly supervision. And counsel argues that the district, because the state wasn't enforcing the policy, indeed, apparently decided to move away or at least modify it, the state wasn't enforcing it, so it would have been futile. So what's the response on the futility argument? That argument, Your Honor, there is absolutely no evidence in this record that the state has moved away from enforcing the monthly requirement. After all, as I've just said, the monthly requirement is fully consistent with the consultative model, and that's fully allowed, and that takes place all over Alaska. Now, the question of is there substantial compliance, those kinds of evidentiary and factual questions could be determined by a due process hearing officer. We're not going to say for sure that there would be a violation here, but if the hearing officer found a violation of the monthly requirement, the hearing officer could and would order compliance with state law. That's why we have that other step of administrative process, and that's why it's so important to have plaintiffs exhaust administrative remedies before they proceed to federal court. And what would the hearing officer's sanctions against the district be if they simply couldn't provide it, couldn't comply? Can a hearing officer order the state to enforce it? The hearing officer would not order the state to enforce it, but I think that is such a stretch here on this record to find that the district can't comply. After all, the district was bringing in physical and occupational and speech therapists. They were bringing them in. The question, I thought, was supervision. They were bringing them in and providing that supervision. Was it frequent enough? Well, on this record, it appears that it wasn't, but the complaint investigator couldn't amend the IEP. And what a complaint investigator does in this type of situation is it's going to either note the violation or perhaps take it to the commissioner of education and seek a change in regulation. Those are perfectly adequate responses to a situation like this. But the issue of inability is just a leap here. There's no reason to think that this district and all districts in this state can't comply with state law. Now, there will be instances where you're going to have to make a finding of substantial compliance. A therapist gets weathered out, isn't able to get to a village for the monthly supervision. Situations like that, or like we see in this record, where the speech therapist had resigned and was able to only come back for three on-site visits out of the five succeeding months. That, I think, would be very reasonable for a hearing officer or for a complaint investigator to make a finding of substantial compliance. But to say that it's futile to go forward on this record, there is no evidence of that. Okay. Thank you. The state makes much of the educational harm component here, and I think that that goes back to a more traditional look at fate. If you look at the definition of fate, the last part of that definition under the IDEA is that the child services are delivered in conformity with the IEP. Here we have a standard that is actually set by the state that's above the IEP. This isn't left at the discretion of the IEP team. So if you look at the second definitional requirement of fate, it's that fate meets state standards. And if a child's education doesn't meet state standards, by definition they're not receiving a fate. So in looking at the fate issue, I think the state is looking at it in a more traditional sense, where federal government and state law here requires strict compliance. Meet means equals. Exactly. What remedy are you seeking? What do you hope to gain from this lawsuit? Brooke hopes to gain the monthly onsite in-person supervision that she was required to receive under the law. In order to access related services, it's important to look at related services and what they do. Related services allow Brooke to access the rest of her education. Without the ability to articulate, without the ability to hold a pencil, without the stamina to make it through the day, Brooke can't access the rest of her special education services. Without the supervision, she's basically receiving services that we don't know on a month-to-month or on a day-to-day basis if they're adequate. So that's really what she's seeking is that oversight that the state requires. The state has set that standard. That's the bare minimum. That's the floor. So with the change in regulation, what was that, as of 2007, that would moot that aspect of your claim? I don't think because of the past harm here, I don't think that that would. No, I'd say the going forward part. The going forward, I think there's two answers to that. The first is that contrary to the state's argument that, you know, districts don't go about it from that position. It's clear here that the services that are being required are the services that they can offer. So the consultative model, you know, that bare minimum, even in our consultative model, they're not there on site. It's still reporting. You just referred to past harm. You want some remedy for past harm? Well, the past harm being the deprivation of that service. Are you seeking something for that, for past harm, or you just want a correction for the future? As a practical matter for Brooke, the damage is going forward, that enforcement of the law, but the district court has broad equitable powers to grant the relief program here. What would it be, though? I mean, if you're saying, as I understand the theory of your past harm, or the reason for the monthly visits is to make sure because the parents and Brooke aren't technically capable, educationally capable of knowing whether what she's getting is equal to what the state requires in terms of quality of service. She didn't get that. The only way she could get that under your theory is every month there needs to be somebody who comes in and looks at the services or talks to Brooke or however they do the supervision and verifies that she is getting what she's supposed to get. She didn't get it, but you haven't established that she actually didn't get it in the past, and you haven't, as I understand it, you didn't appeal. An issue here is not whether she didn't get it in the past because you didn't appeal that issue in the complaint investigation. So you're really looking for what looks like a systemic remedy, and we would have to analyze that in terms of what the state, because you're measuring it against what the state law imposes. Isn't that correct? Absolutely. Okay. All right. May I just ask, are you seeking money damages? I am. All right. Thank you. All right. The case argued is submitted. Thank you for the argument. We'll call the next case on calendar, which is OFC Capital v. AT Publishing. Thank you. Counsel?
judges: Nelson, Tashima, Fisher